## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MELINDA B. SHANE,        ) | |
|          ) | |
|        Plaintiff,     ) | |
|          ) | |
|       vs.        ) | Case No. 11-2689-JAR |
|          ) | |
| CITIMORTGAGE, INC.,       ) | |
|          ) | |
|        Defendant.    ) | |

## MEMORANDUM AND ORDER

Plaintiff filed suit against Defendant CitiMortgage, Inc., under the Kansas Consumer

Protection Act ("KCPA") for deceptive acts and practices in the District Court of Johnson

County, Kansas. Defendant removed the case to this Court.[1] On January 10, 2012, Defendant

filed a Motion to Dismiss (Doc. 8). Then on January 31, 2012, Plaintiff filed her First Amended

Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B).[2] Accordingly, Defendant's original motion to

dismiss is moot. The case now comes before the Court on Defendant's Motion to Dismiss the

Amended Complaint (Doc. 15). The motion is fully briefed, and the Court is prepared to rule.

As explained more fully below, the motion is denied.

### I.    Motion to Dismiss - Rule 12(b)(6) Standard

To survive a motion to dismiss, a complaint must present factual allegations, assumed to

be true, that "raise a right to relief above the speculative level" and must contain "enough facts to

state a claim to relief that is plausible on its face."[3] Under this standard, "the complaint must

---

[1]Doc. 1.

[2]Doc. 10.

[3]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual

support for *these* claims."[4]  The plausibility standard does not require a showing of probability

that "a defendant has acted unlawfully,"[5] but requires more than "a sheer possibility."[6]

The plausibility standard enunciated in *Bell Atlantic v. Twombly*,[7] seeks a middle ground

between heightened fact pleading and "allowing complaints that are no more than 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court

stated 'will not do.'"[8] *Twombly* does not change other principles, such as that a court must accept

all factual allegations as true and may not dismiss on the ground that it appears unlikely the

allegations can be proven.[9]

The Supreme Court has explained the analysis as a two-step process.  For purposes of a

motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but]

we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[10] Thus,

the Court must first determine if the allegations are factual and entitled to an assumption of truth,

or merely legal conclusions that are not entitled to an assumption of truth.[11]  Second, the Court

must determine whether the factual allegations, when assumed true, "plausibly give rise to an

---

[4]*Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[5]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6]*Id.*

[7]*Twombly*, 550 U.S. 544 (2007).

[8]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[9]*Id.* (citing *Twombly*, 550 U.S. at 556).

[10]*Iqbal*, 556 U.S. at 678.

[11]*Id.* at 1950.

entitlement to relief."[12]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]

## II.    Summary of Complaint

The following allegations are taken from Plaintiff's First Amended Complaint.[14]  As noted above, well-pleaded factual allegations in the complaint are assumed to be true for purposes of determining whether the complaint states a claim for relief.

Plaintiff owns residential property that is subject to an existing mortgage with Defendant. Plaintiff's balloon loan payment was due July 1, 2011.  In May 2011, after Plaintiff had begun the balloon loan modification process, Defendant solicited her to instead refinance her mortgage, which would include a payout of funds with the refinance.

During the month of June 2011, Plaintiff began working with Kris Arold, a Mortgage Specialist employed by Defendant, to refinance her existing mortgage.  Also in June 2011, while Plaintiff was involved in the refinance process, Defendant stopped Plaintiff's automatic debit, so that Plaintiff's July and August payments were not automatically made.  Defendant did not inform Plaintiff of this action.  On or about June 24, 2011, Plaintiff was conditionally approved for the refinance loan.  Ultimately, the refinance was denied.

Defendant gave Plaintiff the option to refinance her mortgage in lieu of making her July 1, 2011 balloon payment, and then prevented her from making any payments while damaging her

---

[12]*Id.*

[13]*Id.* at 1949.

[14]Doc. 10.

credit and denying her the option to refinance because of that damaged credit.

Defendant willfully made oral and written representations to Plaintiff that were false as to material facts — such as whether Plaintiff was required to make payments on her existing mortgage during the refinance loan application process. Defendant further willfully concealed, suppressed, omitted and failed to state material facts — such as whether Plaintiff was required to make payments during the refinance process. Following Defendant's denial of Plaintiff's refinance loan, Defendant willfully made oral and written representations to Plaintiff that were false as to material facts regarding her monthly mortgage payments. Such statements included misinforming Plaintiff that her automatic debit had been reinstated and that certain payments would post or had already been posted to her existing mortgage account. Additionally, Defendant's agents made misleading statements to ignore correspondence regarding making payments and not to worry and "it wouldn't be a problem" when Plaintiff's payments were not timely made.

Because of Defendant's deceptive and unconscionable acts, Plaintiff's credit history and ratings are damaged, she was denied the ability to refinance her loan with Defendant, she has been unable to refinance elsewhere due to her damaged credit, and she suffered pecuniary loss. Defendant's representative admitted that the Special Loans Department should have made it clear to Plaintiff that making the balloon payment was her responsibility.

## III. Discussion

Defendant removed this case from Johnson County, Kansas state court pursuant to diversity jurisdiction under 28 U.S.C. § 1322. In diversity jurisdiction cases, "[e]xcept in

matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."[15]  "*Erie* interpreted the Rules of Decision Act, which requires that '[t]he laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.'"[16] "The broad command of *Erie* was . . . federal courts are to apply state substantive law and federal procedural law."[17] Accordingly, Kansas substantive law applies in this case.

Plaintiff's claims — arising under the KCPA — allege deceptive acts and practices as well as unconscionable acts in connection with Plaintiff's negotiations with Defendant to address her mortgage loan serviced by Defendant.  Defendant argues that numerous Kansas courts have held that the KCPA does not apply to the servicing of a loan after its origination, which Defendant contends is the context of Plaintiff's claims in this case.  Accordingly, Defendant asserts that Plaintiff has failed to state a claim under Kansas law.

The threshold issue is whether the transaction in this case is covered by the KCPA. Defendant argues that Plaintiff's Amended Complaint does not allege the existence of a consumer transaction, and therefore fails to state a claim under the KCPA.

"The KCPA requires a 'connection with a consumer transaction' for both deceptive and unconscionable acts and practices."[18]  Defendant relies on the definition of "consumer

---

[15]*Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817 (1938).

[16]*James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011) (citing *Erie*, 304 U.S. at 78, and 28 U.S.C. § 1652).

[17]*Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

[18]*Rylander v. Motor City, Inc.*, 259 P.3d 748 (Kan. Ct. App. 2011).

transaction" in the KCPA to argue that the type of transaction covered is a one-time, single occurrence event — not the servicing of a loan.  The KCPA provides that a consumer transaction "means a sale, lease, assignment or other disposition for value of property or services within this state . . . to a consumer; or a solicitation by a supplier with respect to any of these dispositions."[19]

Plaintiff alleges that Defendant solicited her to refinance her mortgage loan.[20]  "[T]he guiding principle to be applied in interpreting the KCPA is that the act is to be liberally construed in favor of the consumer."[21]  Based on the "plain language of K.S.A. 50-624(c) coupled with the preference for a liberal construction of the act"[22] the loan transaction in this case falls within the definition of a "consumer transaction" and is subject to the provisions of the KCPA.

Defendant further argues that the servicing of a loan does not qualify under the KCPA because it is not a single, one-time occurrence.  Plaintiff's response opposes this contention and also argues in the alternative that this case does involve one transaction — the refinancing of a mortgage.  Since the entire refinance process is arguably one transaction and Defendant has failed to cite authority requiring consumer transactions under the KCPA to be a one-time occurrence, the Court has no basis to adopt this restrictive reading of the KCPA.[23]

---

[19]K.S.A. § 50-624(c).

[20]Doc. 10, ¶ 8.

[21]*State ex rel. Stephan v. Bhd. Bank & Trust Co.*, 649 P.2d 419, 422 (Kan. Ct. App. 1982) (citing K.S.A. § 50-623; *Willman v. Ewen*, 634 P.2d 1061 (Kan. 1981); *State ex rel. Miller v. Midwest Serv. Bur. of Topeka, Inc.*, 623 P.2d 1343 (Kan. 1981)).

[22]*State ex rel Stephan*, 649 P.2d at 422.

[23]The cases cited by Defendant in support of this contention are merely examples of KCPA cases that include a one-time, single transaction.  These cases do not, however, state that only such transactions qualify as consumer transactions under the KCPA.  Defendant fails to cite authority for the contention that *only* one-time, single transactions are covered by the KCPA.  In accordance with the guiding principle that the KCPA be construed

**A.      Deceptive Acts and Practices (Count I)**

Plaintiff's unfair and deceptive business practices claims allege violations of the KCPA, which provides that "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction."[24]

The KCPA is construed liberally to "protect consumers from suppliers who commit deceptive and unconscionable practices . . ."[25]  The Kansas Supreme Court has held that "whether a deceptive act or practice has occurred under the Kansas Consumer Protection Act is not a question of law for the court, but rather a question of fact for a jury to decide."[26] Accordingly, the Court's role is not that of a jury, but instead to determine whether the Plaintiff has sufficiently stated a claim upon which relief can be granted.

"Deceptive acts and practices include, but are not limited to . . . the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact; the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact. . ."[27]  This conduct can constitute a deceptive act "regardless of whether it actually misled the consumer."[28]  Still, the Plaintiff must "establish that there was a

---

liberally to protect the consumer, the Court refuses to impose such a requirement at this time.

[24]K.S.A. § 50-626(a).

[25]K.S.A. § 50-623(b).

[26]*Manley v. Wichita Bus. College*, 701 P.2d 893, 897 (Kan. 1985) (citation omitted).

[27]K.S.A. § 50-626(b)(2) & (3).

[28]*Mortg. Elec. Registration Sys., Inc., v. Graham*, 247 P.3d 223, 231 (Kan. Ct. App. 2010) (citing K.S.A. § 50-626(b)).

misrepresentation of the type described in the subsection."[29]  To survive a motion to dismiss, Plaintiff must establish that her claim has facial plausibility.[30]

Defendant argues that the KCPA has "never been interpreted to apply to an attempted loan refinance or other activity done during the servicing of a loan."[31]  However, in *Graham*, the Kansas Court of Appeals addressed claims arising under the KCPA from a conditional preapproval for a loan modification.[32]  Mortgagors alleged that the lender induced them to lift a bankruptcy stay on foreclosure proceedings and then failed to grant a "preapproved" loan modification.  In addressing the claims, the Kansas Court of Appeals held that "[i]ntent is required for a violation of K.S.A. 50-626(b)(2) and (b)(3)."[33]  The court concluded that the mortgagors had failed to present evidence that the lender intended to deceive them.

Defendant cites this case as evidence that the KCPA does not apply to confusion between a borrower and a lender.  Plaintiff contends that the court merely held that there was insufficient factual evidence to support the allegation under the KCPA — not that such a claim could not proceed.  This Court's reading of the case is in line with Plaintiff's contention.  Holding that there is insufficient evidence to state a claim is not equivalent to finding that the act does not apply and therefore no claim exists.

The Kansas Supreme Court has held that "[t]ransactions that merely appear unfair, or in

---

[29]*Cornerstone Homes, LLC v. Skinner*, 235 P.3d 494, 501 (Kan. Ct. App. 2010).

[30]*Iqbal*, 556 U.S. at 678.

[31]Doc. 16, at 6–7.

[32]*Graham*, 247 P.3d 223.

[33]*Id.* at 231 (citing *Crandall v. Grbic*, 138 P.3d 365, 378 (Kan. Ct. App. 2006)).

retrospect are bad bargains, do not state a claim under the KCPA."[34]  "Where a record is 'devoid of any evidence of deceptive or oppressive practices overreaching, intentional misstatements, or concealment of facts,' there is no claim under the KCPA.[35]

Plaintiff's Amended Complaint alleges that Defendant's agent contacted Plaintiff to inform her that she had missed a regular payment and that the only amount that could be accepted was the amount of the entire balloon payment.  This was the first time Plaintiff discovered that Defendant had cancelled her automatic payment.  That same day, Mr. Arold, another agent, told Plaintiff not to worry and that it "wouldn't be a problem."  Defendant's agent directed Plaintiff to ignore correspondence from the Special Loans Department that told her to make payments.  That next month, one of Defendant's agents again contacted Plaintiff and informed her of another missed payment.  Plaintiff contacted Mr. Arold, who assured her again that it "wouldn't be a problem."  After the call, Plaintiff manually attempted to make her mortgage payments, but she was informed that they could not be accepted because it was an amount less than the full balloon payment.  The day before her scheduled "conditionally approved" refinance closing, Plaintiff was informed that the refinance could not take place because she had not made her regular payments.

Plaintiff alleges that Defendant willfully misrepresented material facts regarding payments on her existing mortgage during the refinance process and willfully omitted these material facts.  She further alleges that following Defendant's denial of her refinance loan,

---

[34]*Gonzales v. Assocs. Fin. Servs. Co. of Kan., Inc.*, 967 P.2d 312, 328 (Kan. 1998) (citing *Remco Enter., Inc. v. Houston*, 9 Kan. App. 2d 296, 300-03, 677 P.2d 567 (1984) (held no violation of the unconscionability section of KCPA where 20-year-old single welfare mother of three with a ninth-grade education would have had to pay 108% more than a cash customer for a TV on a rental agreement with option to purchase.).

[35]*Id.* (citing *Remco*, 677 P.2d at 573).

Defendant willfully misrepresented to Plaintiff material facts regarding her monthly mortgage payments. Such statements included misinforming Plaintiff that her automatic debit had been reinstated and that certain payments would post or had already been posted to her existing mortgage account.

In order to survive a motion to dismiss, Plaintiff's complaint must present factual allegations, which when assumed to be true, "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[36] Plaintiff has met that standard. Her claim against Defendant for deceptive acts goes beyond recitations of legal conclusions and provides enough facts to state a claim to relief that is plausible on its face. Defendant's motion to dismiss Count I is denied.

### B.   Unconscionable Acts (Count II)

"Whether acts are unconscionable under the KCPA is a legal question for the district court. . ."[37] The KCPA does not have a definition of "unconscionable," but the statute does provide a nonexclusive list of examples of unconscionable acts:

> In determining whether an act or practice is unconscionable, the court shall consider circumstances of which the supplier knew or had reason to know, such as, but not limited to the following that:
> . . . .
> (6) the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment. . .[38]

Defendant relies on *Cornerstone Homes, LLC v. Skinner*,[39] in arguing that the KCPA

---

[36]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[37]*Graham*, 247 P.3d at 231 (citing *State ex rel Kline v. Berry*, 137 P.3d 500, 508 (Kan. Ct. App. 2006)); *see* K.S.A. § 50-627(b).

[38]K.S.A. § 50-627(b).

[39]235 P.3d 494 (Kan. Ct. App. 2010).

does not apply to the servicing of a mortgage loan after its origination.[40]  However, Kansas courts have long held that "[a]n unconscionable act or practice violates the act whether it occurs before, during or after the transaction."[41]  Furthermore, the section of the opinion cited by Defendant was addressing K.S.A. § 50-626(b)(8) — a subsection which Plaintiff does not seek to recover under —  when stating that there is "no mention of debt collection practices or the manner in which a seller might exercise its remedies."[42]  Defendant argues that the alleged misstatements were made after Plaintiff failed to meet the July 1, 2011 maturity date of her loan. Defendant seems to conclude that this fact makes this transaction "debt collection."

Plaintiff opposes Defendant's contention that the case at hand is a debt collection action and alleges that Defendant solicited this refinance, which was a business transaction.  Plaintiff argues that she sought to modify her balloon payment, but Defendant solicited her to instead refinance her loan and receive a cash payout.  Given that the Complaint alleges that the parties were involved in refinance discussions before the maturity date, the Court rejects Defendant's argument that this is merely an issue of debt collection.

Plaintiff has sufficiently alleged unconscionable acts in that Defendant made misleading statements upon which she was likely to rely to her detriment.  Accordingly, Plaintiff has met the requisite standard to survive this motion to dismiss.  Defendant's motion to dismiss Count II is denied.

### C.    Fraud

---

[40]Doc. 16, at 6.

[41]*Willman v. Ewen*, 634 P.2d 1061, 1065 (Kan. 1981).

[42]*Cornerstone Homes*, 235 P.3d at 502.

Defendant contends that Plaintiff has asserted a fraud claim in her response to the motion to dismiss.  Defendant argues that the claim appears to be one of alleged fraud by silence, which would require Plaintiff to show a duty by Defendant to affirmatively provide the given information.  However, in the context of a motion to dismiss, the Court reviews the pleadings on their face — not additional documentation.  Therefore, since the claim was not one of the two contained in the Amended Complaint, the Court will not address it here.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss (Doc. 8) is MOOT and therefore **DENIED**.

**IT IS FURTHER ORDERED BY THE COURT** that Defendant's Motion to Dismiss (Doc. 15) is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 31, 2012

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE